KUNZE *v.* BLACKWOOD.

4-4934

Opinion delivered February 21, 1938.

*Ward & Ward,* for appellants.

*Kirsch & Cathey,* for appellees.

SMITH, J. On December 14, 1936, appellee, W. J. Blackwood, filed a suit in ejectment in the circuit court for the eastern district of Clay county, in which he alleged his ownership of three 40-acre tracts of land there described. He alleged that his title had been acquired through sales under decrees foreclosing the lien of the St. Francis Drainage District, made February 14, 1930, for the nonpayment of the taxes due said improvement

district for the years 1926, 1927, 1928 and 1929, and also through a sale under a decree foreclosing the lien of Subsidiary District No. 21 of the St. Francis Drainage District for the taxes for the years 1928 and 1929.

The organization of this original district and the subsidiary district pursuant to special acts of the General Assembly is alleged; and the validity of the organization of these districts and their power to sell lands lying therein for the nonpayment of the taxes due thereon is not questioned.

It was alleged that at these sales the lands were sold by the commissioner to the plaintiff drainage district, and that those sales had been duly confirmed, that the period allowed for redemption had expired, and that plaintiff, Blackwood, had duly acquired this title from the district on January 17, 1936.

The defendant named in the action filed a disclaimer on March 15, 1937, alleging that he held possession as the tenant of Gus J. Kunze, and on the same day Kunze, who asked to be made a party, filed an answer in which he raised the questions hereinafter discussed, and on his motion the case was transferred to equity.

On March 6, 1937, Kunze filed in the chancery court a suit in which he attacked the foreclosure proceedings above-mentioned, and on his motion the two cases were consolidated.

Upon final hearing a decree was rendered upholding the foreclosure proceedings, and this appeal is from that decree.

It is first insisted that Kunze had a right of redemption when the suits were filed, and that he made tender of the taxes and all interest, costs and penalties. This right of redemption is asserted under authority of act 2 of the Acts of the Second Extraordinary Session of the Forty-ninth General Assembly of 1934, p. 3, which act, it is contended, gave an additional right of redemption at any time within three years after its passage, or until January 8, 1937, for that purpose. Without disposing of that question, it may be said that there was no valid attempt to redeem until after that date, both the

answer in the ejectment suit and the suit in the chancery court having been filed at a later date.

It was shown that on November 10, 1936, Kunze offered to pay Blackwood the taxes, interest and costs, as well as the value of any improvements made by Blackwood, and that the tender was declined. The contention is that this offer of redemption was a sufficient compliance with act 2, *supra,* to entitle Kunze to its benefits and to entitle him now to the right of redemption. But we do not think so. Section 8 of this act provides that ". . . the said land may be redeemed by the owner, his agent, or any person for the owner, or anyone or any legal entity or fiduciary having an interest in said land or holding color of title thereto, upon payment to the commissioners of said district of the amount of any assessment or assessments upon which the foreclosure proceedings were based, together with all the costs allocated against said land, but without penalty or interest, . . . ." It is not alleged that any such tender was made to the commissioners of the district. Had it been made, and refused upon the ground that the time for redemption had expired and that the district had already conveyed the land to Blackwood, or for any other reason, a different question would be presented if act 2, *supra,* did, in fact, extend the right of redemption to January 8, 1937. In that case the bill to redeem could have been filed and the requisite deposit made in the registry of the court as was done in the cases of *McCuiston* v. *White,* 189 Ark. 857, 75 S. W. 2d 392, and *Walker* v. *Ferguson,* 176 Ark. 625, 3 S. W. 2d 694. See, also, *Deaner* v. *Gwaltney,* 194 Ark. 332, 108 S. W. 2d 600, and *Baur* v. *Gwaltney,* 191 Ark. 1031, 88 S. W. 2d 1005. But it was not alleged, and has not been shown, that Kunze attempted a redemption in the manner provided by act 2, *supra,* even though that act is applicable to the facts of this case.

At § 1174, vol. 2, of Sloan's Improvement Districts in Arkansas it is said: "But the right to redeem the land after it has been sold by the commissioner under the decree of the court is purely a privilege conferred by statute, and does not exist independently. The right of

the owner to redeem from a judicial sale exists, therefore, only in those cases which fall within the statute granting such privilege, and can be asserted only within the time and in the manner prescribed by the statute."

It is contended that the foreclosure decrees and the sales made pursuant thereto are void for the reasons hereinafter stated. First, that the delinquent lists were not properly filed. But that contention is answered adversely to appellant in the cases of *Moore* v. *Long Prairie Levee District,* 153 Ark. 85, 239 S. W. 380, and *Beasley* v. *Horner,* 173 Ark. 295, 292 S. W. 130.

It is next argued that the complaint did not contain sufficient allegations to confer jurisdiction upon the court to render the decrees of foreclosure, in that it failed to allege that the lands proceeded against were in the Eastern District of Clay county. We do not copy the complaint, but, when read in its entirety, it is not found defective in this respect. Its caption shows that it was brought in the Eastern District of Clay county, and it recites the legislation pursuant to which the districts were organized and which assessed the taxes alleged to be delinquent, and contains an accurate and correct description of the three tracts of land herein described, which could only be in the Eastern District of Clay county.

It is argued that the notice of filing complaint was defective in that it, too, failed to describe the lands proceeded against. This is the notice provided by the acts creating the districts, and those amending them, which gave notice to the landowners that suit had been filed to enforce the collection of the delinquent drainage taxes. As affecting the lands here involved the descriptions read as follows:

Township 18 N R. 8 E

| Name of Owner | Part of Section | Sec. | Area | Taxes 1926 | Taxes 1927 |
|---|---|---|---|---|---|
| Fred Mathews | NE SE | 5 | 40 | 17.75 | 19.52 |
| Same | SE SE | 5 | 40 | 17.75 | 19.52 |
| Geo. H. French | SW SE | 5 | 40 | 17.75 | 19.52 |

Similar notices were published in the cases of the other two foreclosure suits, and the objection is that, instead of describing the land as NE SE, it should have read: NE¼ SE¼. The same objection is made, of course, to the description of the other two tracts.

This objection to the description here employed is disposed of by the opinion in the case of *Chestnut* v. *Harris*, 64 Ark. 580, 43 S. W. 977, 63 Am. St. Rep. 213, where a similar description had been employed, and was held sufficient. In so holding Judge BATTLE said:

"The statutes of this state provide that each tract or lot of real property shall be so described in the assessment thereof for taxation as to identify and distinguish it from any other tracts or parts of tracts; and the same shall be described, if practicable, according to section, or subdivisions thereof, and congressional townships. They recognize the survey of the United States, and the division of lands, according thereto, into townships and ranges, and sections and parts of sections, and that a description according to such survey will be good and sufficient. For this reason it has been held that a description of land for assessment by the abbreviations commonly used to designate government subdivisions would be sufficient. *Cooper* v. *Lee*, 59 Ark. 460, 27 S. W. 970.

"In the case at bar the assessor attempted to assess a forty acres in section 24, in township 13 and range 7, in Drew county, in this state. It was a legal subdivision of land—a fourth of a quarter of a section of land. As described, it was described as the NE. SE. of that section. The first is the abbreviation of northeast, and the last of southeast. In the order they are used, they could designate only one legal subdivision of a section into forty acres, and that is the northeast quarter of the southeast quarter. They are not reasonably susceptible of any other interpretation. We think the land was sufficiently described in the assessment and notice of sale." See, also, *Guy* v. *Stanfield*, 122 Ark. 376, 183 S. W. 966.

It appears that the precedent for the decree which was approved by the chancellor did not describe any

land, but contained the direction: "Clerk: here copy all land not paid on." It is not contended, however, that the decree as entered did not describe the land. It is only objected that as entered the decree described the land as being in township 19, range 8, and that the word "north" was omitted after the word and figures "township 19" and that the word "east" was omitted after the word and figure "range 8."

This precedent was not the decree. It was a mere form of the decree to be entered by the clerk, which it would have been his duty to enter even though no form for it had been prepared.

We said in the case of *Stanton* v. *Arkansas Democrat Co.,* 194 Ark. 135, 106 S. W. 2d 584, that "It is a matter of common knowledge that some judges permit the clerks of their courts to enter judgments, which are subject to their approval, while other judges require the submission of precedents for approval before their entry. But in any event and in all cases it is the presiding judge—and not the clerk—who determines whether any judgment has been rendered, and what that judgment was."

It is not questioned that the decree as entered described the land, and it is, therefore, unimportant that the form or precedent, intended to aid the clerk in entering the decree, did not also describe the lands. It was essential that the decree of foreclosure describe the land, and this it did.

The record shows that the commissioners of the district were engaged in refinancing and refunding the obligations of the district, and had so advised the landowners therein, and, as a means to this end, were urging them to pay their delinquent taxes. Appellant had been so advised in a personal letter from the secretary of the drainage districts, and one of the commissioners had personally called appellant's attention to the necessity of immediately paying the delinquent taxes. The form of the decree was so prepared that appellant and other landowners might redeem their lands before the actual entry of the decree of foreclosure. No prejudice could result to the landowners from this direction, and it is

undisputed that appellant did not redeem his lands before the entry of the decree, or at all.

It appears that, in some of the decrees as entered of record, and in some of the reports of sale as confirmed by the court and as entered of record, and in some of the deeds executed pursuant to the decrees and reports of sale, the word "north" after the township number and the word "east" after the range number were omitted, and appellee prayed, in his answer to appellant's complaint filed in the chancery court, that this omission be cured by a *nunc pro tunc* order supplying the omission. It is insisted that the prayer for this relief, which the court below granted, is an admission that the proceedings containing the omissions were fatally defective, and the power of the court to cure these defects is questioned.

The cases of *Beck* v. *Anderson-Tully Co.*, 113 Ark. 316, 169 S. W. 246, and *O'Barr* v. *Sanders*, 113 Ark. 449, 169 S. W. 249, decide this question adversely to appellant's contention.

The case of *Beck* v. *Anderson-Tully Co., supra,* was one in which the St. Francis Levee District had foreclosed its lien for the nonpayment of certain levee taxes due it, and it was there held that the complaint and notice required by the acts under which the levee district proceeded to enforce payment of the delinquent levee taxes must correctly describe the lands proceeded against, and that a correct description was necessary to give the court jurisdiction to foreclose the lien, and that neither the complaint or notice were susceptible of amendment. In that case, as in this, there had been an omission to insert the word "north" after the number of the township, and the omission also to insert the word "east" after the range number. These omissions were held unimportant for the reason, as stated in a headnote to that case, that "The court will take judicial notice that all lands in Crittenden county, Arkansas, are in townships north of the base line and east of the fifth principal meridian, and it is, therefore, unnecessary, in describing lands in Crittenden county to put the word 'north' after the figure

designating the township, nor the word 'east' after the figure designating the range."

So, here, we take judicial notice that all lands in Clay county are in townships north of the base line and east of the fifth principal meridian, and must, therefore, be in townships which are north of the base line and in ranges which are east of the fifth principal meridian. The *nunc pro tunc* orders complained of were not necessary, therefore, to cure and perfect the descriptions, as the omissions complained of did not render them defective and insufficient.

The case of *O'Barr* v. *Sanders, supra,* is equally in point. That case involved a sale in the very drainage district here involved, and the lands were in the same township and range here involved, and the opinion in that case recites that seventeen different grounds were given as reasons for avoiding the sale made for the drainage taxes. An examination of the transcript in that case discloses the fact that one of those grounds was that the complaint and other steps leading to the foreclosure decree and the execution of the commissioner's deed under the sale made pursuant to the decree did not show the word "north" after the township number nor the word "east" after the range number. The court evidently treated the opinion in the Beck case, *supra,* as conclusive, of the sufficiency of the description without quoting from it. Those cases are conclusive of the question which here again has been raised. The sale in the O'Barr case, *supra,* was upheld, and so must be the sale here attacked, and the decree appealed from will, therefore, be affirmed.